Judge Simpson
delivered the opinion of the Court.
The appellant entered a caveat, contesting the right of the appellee to a patent on a survey of three hundred acres of land, in the county of Whitley.— Pie claimed a right to the land, superior to that of the appellee, on two grounds. Prist, a prior entry with the surveyor of the warrant under which he asserted title. Second, a pre-emption right as an actual settler, to the land in controversy.
1. The validity of the first ground, depends upon the construction of the statutes relating to this subject. The act of 1837, (3 Stat. Law, 388,) prescribes the mode in which a warrant is to be obtained from the clerk of the county court, and provides, that “ on the production of the warrant to the surveyor of the county, he shall proceed and survey the same, and do all and every act,-which he was required to do in the case of treasury warrants, before the passage of the act of 1835.”
Under the act of 1815, (2 Stat. Law, 1019,) the proprietor of a warrant, upon lodging it with a surveyor of a county, has a right to have one or more surveys executed thereon, upon any waste or unappropriated lands, which he or his agent might point out, or show for that purpose. The applications for such surveys, *569 were required to be made at the office of the county surveyor, and it was his duty to enter in a book to be kept by him, the date of the application when made, with the number of the warrant, and the number of acres expressed in it, and the name of the person or persons for whom the application was made. And it was also his duty when he proceeded to make the survey so applied for, to pay the strictest attention to the seniority of the application, surveying those fh’stwhich were first applied for. This was the law that regulated the duty of surveyors with respect to treasury warrants, at the time of the passage of the act of 1835, (3 Stat. Law,386,) which vested all the vacant and unappropriated land in this commonwealth, north and east of the Tennessee river, in the county courts of the respective counties, for the purposes of internal improvement.
1. By the act of 1815, a survey under a Ken tuckv land warrant "is the commencement of the title. The filing of the war rant with the surveyor gives no right to any specific land, until regular application to the surveyor for a snrvey thereof.
*569 The warrant under which the plaintiff claimed was lodged with the surveyor of the county, before the one under which the defendant had his survey made was lodged with him. One or more surveys had been made under the plaintiff’s warrant, prior to the year 1843. No subsequent application for a survey thereon, seems ever to have been made at the office of the county surveyor as required by law, although the whole quantity of land specified in the warrant, had not been appropriated by the previous surveys.
The warrant under which the defendant had his survey executed, was lodged in the office of the county surveyor in December 1846, but his survey was made before the survey under which the plaintiff claims was executed.
The act of 1815, before referred to, declares that the actual survey shall be the commencement of the title. The warrant does not give to the proprietor a right to any specific land, nor is such a right created by the mere act of lodging it with the surveyor of the county. As the plaintiff did not prove that he had made an application for a survey in the mode *570 prescribed by law, at any time before the defendant had his survey executed, it is not deemed necessary to decide whether such an application, if made, would have given him a prior right to the land. The statute makes it the duty of the surveyor to execute the surveys in the order in which they may have been applied for, and it would certainly be a violation of duty on his part, to disregard this requisition of the law; and it may be, were he to do so, that it might authorize the prior applicant to enter a caveat, to prevent the owner of the survey thus improperly made by the surveyor, from carrying it into grant.— But as before remarked, it is not necessary to decide this question in this case, inasmuch as the plaintiff did not make a legal application for a survey, before the defendant’s survey had been executed; and the fact that the warrant under which he claimed, had been lodged with the surveyor, imposed no duty on the latter to make a survey thereon, until an application to do it had been regularly entered, nor gave a right of priority of any kind to the owner of the warrant.
2. The act of 18.31 gave a preemptive right to actual settlers to any land which they had improv cd, or cultivat ed, or enclosed, and was in their actual possession, use, or occupation. The subsequent act of 1835 gave no preemption to mere settlers on vacant land, without any claim or color of title, and vested all the vacant land in the coun ty courts. By the act of 1839 to amend the act of 1831, a preemptive right is given to any actual settler upon any vacant land, subject to the limitations and conditions of the laws then in force, to any number of acres not exceeding 100, to include the improvement to be laid oif in a square as near as may be. (3 Statute Law, 385.) Two classes of settlers are recognized by the statutes, the one holding under color of title, deed, or bond for title; theoth er without color of title. A settler uponland previously surveyed, has no pveemptiveright under either of the statutes referred to.
*570 2. By the act of 1835, before referred to, all the lands that were vacant and unappropriated on the first day of August, 1835, within the boundary therein specified, were vested in the county courts of the respective counties. The only reservation in the act in favor of actual settlers, was that contained in the fourth section thereof, which applies alone to such settlers as have either a deed or bond for the land on which they reside.
At the time of the passage of this act, the act of 1831, which allowed a pre-emptive right to actual settlers to such land as had been improyed, or cultivated, or enclosed by them, or was in their actual use or occupation, was the only law in force in favor of actual settlers. As the act of 1835 made no reservation in favor of mere settlers on vacant land, without any claim or color of title, and vested all the vacant and unappropriated land in the county courts, *571 it might be a serious question, whether this act did not operate as a virtual repeal of the act of 1831 on this subject. However, it appeal’s that the legislature in the year 1839, passed an act to amend the act of 1831, by which, it was enacted “ that the actual settler on any vacant and unappropriated land in this commonwealth, shall have a pre-emption right, subject to the limitations and conditions of the laws now in force, to any number of acres of said land, not exceeding one hundred, which shall be laid off so as to include his improvement, and as nearly as may be in a square.” (3 vol. Slat. Laws, 385.)
From this it appears that the legislature did not consider the act of 1831 as repealed by the act of 1835, but intended to make provision for a different class of persons, and consequently that there are two classes of actual settlers, who are entitled under these different enactments, to pre-emption rights on vacant land; one embracing such persons as have settled thereon under color of title, the other such persons as are mere settlers, without any color of title whatever.
The appellant does not belong to the first class, having exhibited neither a deed or bond for the land, and therefore is not embraced by the act of 1835.
Nor can he claim a pre-emption right under the act of 1839, because the land upon which he settled, and upon which all his improvements are situated, had been previously appropriated, by a survey made in the name of Meadows; so that he was not in fact an actual settler upon vacant and unappropriated land. It is true that the survey of Meadows covers only fifty acres of land, and that if the appellant has a pre-emption right to one hundred acres, it would extend beyond this survey, and embrace part of the land covered by the defendant’s survey. But having settled upon land that was appropriated, he has not acquired a pre-emption right by such settlement, and consequently has no valid claim to any of the land within the defendant’s survey.
3. Tlie survey by the act of 1815 being the commencement of the title, it seems that the party is entitled to the land surveyed, whether it conform to the entry'or not.
As the plaintiff in a case of this kind is not entitled to any relief, unless he shows some right to the land in himself, the objection he makes to the defendant’s survey, because it does not embrace the same land described in the entry made by the surveyor, need not be considered. We would however remark, that the survey is the commencement of the title under the act of 1815, which act does not seem to contemplate the appropriation of the land by an entry, but requires the surveyor to survey for the proprietor of the warrant, any waste or unappropriated lands which he may point out or show for the purpose. And as the defendant has the oldest survey, and a specific right to the land which it embraces, from the time it was executed, except to that part of it which conflicts with the survey of Meadows, and the plaintiff has not established a better right to any part of the land, his caveat cannot be sustained.
Wherefore, the judgment of the court below, dismissing the plaintiff’s caveat, is affirmed.